```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION
```

| | | |
|---|---|---|
| Lexington Insurance Company, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 17-cv-3513 |
| Chicago Flameproof & Wood Specialties Corporation, JL Schwieters Construction, Inc., and JL Schwieters Building Supply, Inc., | ) ) ) ) ) ) | |
| Defendants. | ) | |

## Memorandum Opinion and Order

In this insurance coverage dispute, Lexington Insurance Company ("Lexington") seeks a declaratory judgment that it has no duty to defend or indemnify its insured, Chicago Flameproof and Wood Specialties Corporation ("Chicago Flameproof"), in a lawsuit pending in the United States District Court for the District of Minnesota. Chicago Flameproof counterclaims, seeking a declaratory judgment that Lexington has a duty to defend it in the same federal lawsuit, as well as two other lawsuits pending in Minnesota state courts, which name Chicago Flameproof as a third-party defendant. Before me are the parties' cross-motions for summary judgment. Because I find that the underlying complaints are not sufficient

to invoke Lexington's duty to defend, I grant Lexington's motion and deny Chicago Flameproof's.

I.

Lexington issued a commercial general liability insurance policy ("the policy" or "the CGL policy") to Chicago Flameproof, an Illinois-based lumber retailer, which was in effect from December 31, 2015 to December 31, 2016. The policy provides that Lexington will pay sums that Chicago Flameproof "becomes legally obligated to pay as damages because of bodily injury or property damage" that is "caused by an occurrence that takes place in the coverage territory" and that "occurs during the policy period." The policy defines "property damage" as "physical injury to tangible property, including all resulting loss of use of that property" and "loss of use of tangible property that is not physically injured." It defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Under the policy, Lexington has "the right and duty to defend [Chicago Flameproof] against any suit seeking [covered] damages," but it has no duty to defend against a suit seeking uncovered damages. The policy also includes several business risk exclusions. For instance, the policy excludes coverage for property damage to Chicago Flameproof's goods or products. It also excludes coverage for property damage to "impaired property or property that has not been physically

injured" that arises out of "a defect, deficiency, inadequacy, or dangerous condition in [Chicago Flameproof's] product."

Lexington and Chicago Flameproof dispute whether the policy potentially covers damages alleged against Chicago Flameproof in three lawsuits—one in federal court and two in Minnesota state courts—all stemming from Chicago Flameproof's sale of lumber to framing contractors JL Schwieters Construction, Inc. and JL Schwieters Building, Inc. (collectively, "JLS"). According to the underlying complaints, between October 2015 and March 2016, JLS contracted with two general contractors, Big-D Construction Midwest, LLC and DLC Residential, LLC to provide labor and material for the framing and paneling for four building projects in Hennepin County, Minnesota. Elness Swenson Graham Architects, Inc. ("ESG"), the architectural firm for all four projects, required that fire-retardant-treated ("FRT") lumber meeting International Building Code ("IBC") requirements be used for the exterior walls of each building.

To procure compliant FRT lumber for the projects, JLS allegedly contracted with Chicago Flameproof to purchase a particular brand of FRT lumber, D-Blaze lumber, which it knew to be an IBC-compliant brand approved by ESG and which JLS had ordered from Chicago Flameproof in the past. At the time, D-Blaze was allegedly the only brand of lumber that Chicago Flameproof advertised on its website. Instead of the D-Blaze brand that JLS

3

was expecting, however, Chicago Flameproof delivered its in-house FlameTech brand lumber, which, despite being marked as FRT lumber, purportedly was not IBC-compliant because it had not been tested, certified, listed, or labeled pursuant to IBC requirements.

Unaware that Chicago Flameproof had delivered a different type of lumber, JLS installed the FlameTech lumber, which allegedly resembled the D-Blaze FRT lumber in all material respects, in the four building projects. When the building owners and ESG discovered that the lumber was non-compliant, they instructed JLS to remove and replace it with approved FRT lumber. JLS subsequently brought suit against Chicago Flameproof, alleging, among other things, that the company had either negligently or fraudulently misrepresented the type of lumber that it was providing, leading to significant costs and expenses for JLS, including loss of manpower, wages, business interruption, attorney's fees, liquidated damages, and damage to the "exterior walls, wiring, and Tyvek insulation on the Projects" resulting from the removal process. In addition to its negligent misrepresentation and fraudulent misrepresentation counts, JLS charged Chicago Flameproof with deceptive business practices, false advertising, consumer fraud, breach of warranties, and breach of contract. In the state lawsuits against it, JLS brought third-party complaints against Chicago Flameproof seeking contribution and indemnification for the same conduct.

When Chicago Flameproof tendered its defense of the federal lawsuit to Lexington, its CGL insurer, Lexington filed this declaratory judgment action. Lexington contends that its duties to defend and indemnify are not triggered here because the claims against Chicago Flameproof do not involve property damage, were not the result of an occurrence, and were otherwise excluded by the policy's business risk exclusions. Chicago Flameproof counters that the duty to defend is triggered because the claims in the underlying lawsuits allege damages that are at least potentially covered by the policy.

## II.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Northfield Ins. Co. v. City of Waukegan*, 701 F.3d 1124, 1128 (7th Cir. 2012). In this case, Lexington and Chicago Flameproof agree that no factual disputes exist, and they each accordingly move for summary judgment to resolve the contract interpretation question—whether Lexington has a duty to defend under Chicago Flameproof's CGL policy—that separates them. *See Twenhafel v. State Auto Prop. & Cas. Co.*, 581 F.3d 625, 628 (7th Cir. 2009) ("Under Illinois law, the interpretation of an insurance policy is a question of law that is properly decided by way of summary judgment.").

The parties agree that Illinois law governs this dispute. Under Illinois law, a liability insurer's duty to defend is broad, but it is not limitless. *Westfield Ins. Co. v. Nat'l Decorating Serv., Inc.*, 863 F.3d 690, 695 (7th Cir. 2017). To determine whether an insurer must defend its insured, courts compare the allegations of the underlying complaint or complaints and the express provisions of the insurance policy in dispute. *Westfield Ins. Co. v. W. Van Buren, LLC*, 59 N.E.3d 877, 882 (Ill. App. Ct. 1st Dist.), *appeal denied*, 65 N.E.3d 847 (Ill. 2016). "If the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Pekin Ins. Co. v. Wilson*, 930 N.E.2d 1011, 1017 (Ill. 2010). The complaint must be liberally construed and all doubts resolved in favor of coverage for the insured. *Universal Underwriters Ins. Co. v. LKQ Smart Parts, Inc.*, 963 N.E.2d 930, 937 (Ill. App. Ct. 1st Dist. 2011). Illinois courts "give little weight to the legal label that characterizes the underlying allegations." *Lexmark Int'l, Inc. v. Transp. Ins. Co.*, 761 N.E.2d 1214, 1221 (Ill. App. Ct. 1st Dist. 2001). The relevant inquiry is whether "the alleged conduct arguably falls within at least one of the categories of wrongdoing listed in the policy." *Id.* "If several theories are alleged in the complaint, a duty to defend arises even if only one of them falls within the policy provisions." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Absolute Title Servs.,*

*Inc.*, No. 09 C 4165, 2011 WL 4905660, at *2 (N.D. Ill. Oct. 13, 2011).

Under the CGL policy at issue here, Lexington has a duty to defend Chicago Flameproof against any suits alleging "property damage" resulting from an "occurrence." Lexington contends that JL's complaints against Chicago Flameproof allege neither property damage nor an occurrence as they are defined under the policy. I disagree with Lexington with respect to the property damage issue. The policy defines property damage to include "physical injury to tangible property." For purposes of general liability insurance in Illinois, a physical injury "occurs when property is altered in appearance, shape, color, or in other material dimension, and does not take place upon the occurrence of an economic injury, such as diminution in value." *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 500 (Ill. 2001). In the underlying complaints here, JLS plainly seeks to hold Chicago Flameproof liable for physical injury to tangible property. In its federal suit, JLS repeatedly claims that the removal and replacement process caused or will potentially cause damage to existing elements of the four building projects, including damage to the exterior walls, wiring, and Tyvek insulation. Chicago Flameproof Countercl. Exh. B. ¶¶ 44, 47, 62, 76, 107, 118, 126, 137. Lexington attempts to characterize these alleged damages as nothing more than economic injuries stemming from the repair and replacement of the non-compliant lumber. While

7

it is true that, under Illinois law, the costs of repairing and replacing an insured's defective product or work generally do not constitute property damage, see *Eljer*, 757 N.E.2d at 502, this does not necessarily foreclose coverage where, as here, there are actual allegations of physical alterations to property other than the insured's product. *See Int'l Envtl. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh,* 843 F. Supp. 1218, 1226-27 (N.D. Ill. 1993) (insurer's duty to defend was triggered because the underlying complaints alleged that property damage to other materials would be necessary in repairing an alleged defect in the insured's fan coils); *Elco Indus., Inc. v. Liberty Mutual Ins. Co.*, 414 N.E.2d 41, 46 (Ill. App. Ct. 1st Dist. 1980) (concluding that physical damages necessarily caused to other engine parts from removing the insured's defective pins constituted property damage). *Cf. Diamond State Ins. Co. v. Chester-Jensen Co.,* 611 N.E.2d 1083, 1090 (Ill. App. Ct. 1st Dist. 1993) (court could not determine that there was coverage for property damage because the complaint did not indicate injury to any portion of the HVAC system in question); *Bituminous Cas. Corp. v. Gust K. Newberg Const. Co.*, 578 N.E.2d 1003, 1006, 1008 (Ill. App. Ct. 1st Dist. 1991) (although insured argued that it could be inferred from the underlying complaint that "other portions of the building had to be removed and replaced or repaired," the complaint did not actually allege any physical injuries to tangible property). If the underlying complaints

claimed only that Chicago Flameproof was liable for the costs of removing and replacing the non-compliant lumber—*e.g.,* labor costs, project delay costs, or liquidated damages—I would be inclined to agree with Lexington that no property damage was at issue. But that is not the case. The complaints plainly *do* allege that other building materials were physically injured or altered in the removal process, and these alleged collateral damages potentially fall within the policy's definition of property damage.[1]

Concluding that there are allegations of property damage, however, does not end the coverage inquiry. For property damage to be covered by the CGL policy, it must be caused by an "occurrence." Compl., Exh. 2 at 6. The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 47. Although the policy does not define "accident," Illinois courts have understood the term in insurance coverage cases to mean "an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned, sudden, or unexpected event of an inflictive or unfortunate character." *Stoneridge Dev. Co. v. Essex Ins. Co.*, 888 N.E.2d 633, 650 (Ill. App. Ct. 2d Dist. 2008); *see*

---

[1] Lexington's argument that such alleged physical damages cannot constitute property damage after *Eljer* is without merit. *Eljer* held only that physical damage to property resulting from a voluntary decision to replace a plumbing system that might leak in the future was not insured. *See* 757 N.E.2d at 504.

9

*also W. Am. Ins. Co. v. Midwest Open MRI, Inc.*, 989 N.E.2d 252, 260 (Ill. App. Ct. 1st Dist. 2013). The focus is generally on "whether the injury is expected or intended by the insured, not whether the acts were performed intentionally." *Lemko Corp. v. Fed. Ins. Co.*, 70 F. Supp. 3d 905, 916 (N.D. Ill. 2014). However, even "if the person performing the act did not intend or expect the result, if the result is the rational and probable consequence of the act, or, stated differently, the natural and ordinary consequence of the act, it is not an accident" for liability insurance purposes. *Stoneridge*, 888 N.E.2d at 652 (internal citations and quotation marks omitted). Thus, injuries that "should have been reasonably anticipated by the insured" are expected injuries. *Farmers Auto. Ins. Ass'n v. Danner*, 967 N.E.2d 836, 843 (Ill. App. Ct. 4th Dist. 2012).

Chicago Flameproof contends that the underlying suits satisfy the policy's occurrence requirement because they assert negligent misrepresentation and because Chicago Flameproof did not expect or intend the injuries to other building materials. Chicago Flameproof is correct that negligent acts, including those giving rise to negligent misrepresentation claims, can result in an occurrence "as long as the insured did not expect or intend the injury." *USAA Cas. Ins. Co. v. McInerney,* 960 N.E.2d 655, 661 (Ill. App. Ct. 2d Dist. 2011). But this does not mean that merely casting a claim in terms of negligence is enough to establish an

10

occurrence. It is the actual alleged conduct—not the labels given to a particular cause of action—that determines whether the duty to defend is triggered. *See Lexmark*, 761 N.E.2d at 1221. Here, the only allegations of negligence against Chicago Flameproof are that it failed to exercise reasonable care when it represented that it had D-Blaze lumber in stock and when it did not inform JLS that its orders could not be fulfilled. Countercl. Exh. B ¶ 56, 58. Otherwise, JLS's federal complaint alleges knowing and intentional conduct on the part of Chicago Flameproof: that it made a "unilateral decision to ship Flametech lumber to JL Construction in place of the D-Blaze FRT lumber that had been ordered," *id.* ¶ 58; that it "concealed that the FlameTech lumber had not been tested or listed pursuant to IBC requirements for FRT lumber," *id.* ¶ 32; and that it "falsely represented on the bills of lading that the lumber delivered to JL[S] was FRT lumber," *id.* ¶ 74. Although one claim is couched in negligence terminology, the thrust of JLS's complaint is that Chicago Flameproof engaged in deliberate conduct—the shipping of the wrong lumber and the concealment of that fact—that caused the alleged property damage. *Cf. Lemko*, 70 F. Supp. 3d at 916 ("The complaint is replete with allegations that the Lemko defendants' misconduct was knowing and intentional, and the supporting facts leave little room for an inference that the defendants could not have expected the injuries alleged to be the result of their actions."); *Danner*, 967 N.E.2d at 844

11

(concluding that acts alleged in a negligence claim could not reasonably be considered accidental in light of the surrounding allegations). That Chicago Flameproof's delivery of the FlameTech lumber was allegedly intentional does not necessarily mean that it expected or intended the collateral injuries to the exterior walls, wiring, and insulation. *See Atl. Mut. Ins. Co. v. Am. Acad. of Orthopaedic Surgeons*, 734 N.E.2d 50, 58 (Ill. App. Ct. 1st Dist. 2000) ("[T]he issue that must be determined is whether the injury was expected or intended, not whether the acts were performed intentionally."). But even if it did not intend the damages to other building materials, Chicago Flameproof could have and should have reasonably anticipated that such injuries could result from supplying its FlameTech lumber to JLS, if, as alleged in the underlying complaints, the FlameTech lumber did not qualify as FRT lumber because it had not been tested, certified, listed or labeled pursuant to IBC requirements. Countercl. Exh. B ¶ 32. If Chicago Flameproof knowingly supplied non-IBC-compliant lumber and concealed that it did so, as JLS alleges, then the property damages that allegedly resulted from tearing out that non-compliant lumber cannot be said to have been caused by any accident. Rather, these damages are the natural and ordinary consequence of knowingly supplying a non-compliant product and thus do not potentially fall within the CGL policy's coverage. *See Stoneridge*, 888 N.E.2d at 652 ("[I]f the result is the rational and probable consequence of

the act, or, stated differently, the natural and ordinary consequence of the act, it is not an accident"); *Gust K. Newberg*, 578 N.E.2d at 1010 (damages flowing from an HVAC system not performing as expected are "no more than the natural and ordinary consequences of installing an inadequate HVAC system"); *Viking Constr. Mgmt. Inc. v. Liberty Mutual Ins. Co.*, 831 N.E.2d 1, 7 (Ill. App. Ct. 1st Dist. 2005) (damages flowing from a contractor's use of inadequate building materials are an ordinary and natural consequence that does not trigger coverage). *Cf. Elco*, 414 N.E. at 44-45 (finding an occurrence where the insured was *unaware* of the defective nature of its product until it was installed, so the resulting damages were not expected from its standpoint).

The duty to defend is broad, but it is not limitless. *Westfield*, 863 F.3d at 695. There must be at least a potential for coverage under the policy at issue for the duty to be triggered. Here, although the underlying federal complaint contains one count for negligent misrepresentation, mere inclusion of a negligence theory does not—and cannot—by itself satisfy the occurrence requirement. Nowhere in the complaint are there allegations of an unforeseen or accidental event that produced property damage.

Because there is no alleged occurrence and thus no potential coverage here, there is no need to address whether the business risk exclusions that Lexington asserts would also bar coverage. *See W. Van Buren*, 59 N.E.3d at 886; *Hartford Fire Ins. Co. v. Flex*

13

*Membrane Int'l, Inc.,* No. 00 C 5765, 2001 WL 869623, at *3 (N.D. Ill. Aug. 1, 2001).

III.

For the foregoing reasons, I grant Lexington's motion for summary judgment and deny Chicago Flameproof's motion. Judgment is entered in Lexington's favor. Lexington has no obligation to defend Chicago Flameproof in the underlying suits.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: August 10, 2018